IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

CHRISTIAN FRANKLIN,

       Plaintiff,

   v.                           Civil Action No. 3:24cv287

DAVID STEINER,[1]

       Defendant.

## MEMORANDUM OPINION

This matter comes before the Court on Defendant Louis DeJoy's Motion to Dismiss (the "Motion").[2] (ECF No. 19.) Plaintiff Christian Franklin, proceeding *pro se*, responded in opposition to the Motion, (ECF No. 22), and Mr. DeJoy replied, (ECF No. 24).

The matter is ripe for disposition. The Court dispenses with oral argument because the materials before it adequately present the facts and legal contentions, and argument would not aid in the decisional process.

For the reasons articulated below, the Court will grant the Motion. (ECF No. 19.)

---

[1] David Steiner was appointed Postmaster General of the United States Postal Service in July 2025. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, he has been substituted for the former Postmaster General Louis DeJoy in this action.

[2] The Court employs the pagination assigned by the CM/ECF docketing system.

## I. Factual and Procedural Background[3]

**A.**     **Factual Allegations**

**1.**     **Mr. Franklin's Employment with United States Postal Service**

Mr. Franklin is "an employee from the United States Postal Service." (ECF No. 12 ¶ 1.) Defendant Louis DeJoy was the then "Postmaster General of the United States and the United States Postal Service" during the time of the underlying events.[4] (ECF No. ¶ 2.)

In November 2017, Mr. Franklin began working with the United States Postal Service ("USPS") as a "seasonal Postal Support Employee." (ECF No. 12-1, at 6.) On June 4, 2018, he started working as a "City Carrier Associate." (ECF No. 12-1, at 6.) On November 23, 2019, he was working at the Montrose post office. (ECF No. 12-1, at 6.) In November 2021, Mr. Franklin was discharged from USPS. (ECF No. 12-2, at 32.)

**2.**     **Mr. Franklin Injures His Back on the Job**

On May 5, 2020, Mr. Franklin "sustained an injury while delivering mail on his postal route" when he "tripped on wet grass", struck concrete, and injured his lower back. (ECF No. 12 ¶ 17.) The next day, on May 6, 2025, he "report[ed] to work and let[] them know about the injury[,]" then went to Patient First. (ECF No. 12-1, at 6.) On May 18, 2020, Mr. Franklin sustained a "second injury to [his] back" after he "slipped on wet grass[.]" (ECF No. 12-1, at 6; ECF No. 12-2, at 6.)

---

[3] In considering the Motion, (ECF No. 19), the Court will assume the well-pleaded factual allegations in the Amended Complaint to be true and will view them in the light most favorable to Mr. Franklin. *Mylan Labs., Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993); *see also Republican Party of N.C. v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992).

[4] For the remainder of this Opinion, the Court will substitute Mr. Steiner for Mr. DeJoy, as he is now the proper party.

Between May 28, 2020 and September 20, 2021, Mr. Franklin visited the Mechanicsville Center Patient First facility seventeen times regarding his injury. (ECF No. 12-2, at 8.) Dr. Mokhtar Ould Morgan diagnosed Mr. Franklin with a "sprain of ligaments of lumbar spine" from "slipp[ing] on the grass and hit[ting] back on concrete step[.]" (ECF No. 12-2, at 8.)

### 3.    Mr. Franklin's Interactions with Co-workers and Supervisors After His Injury

"After being injured on the job and seeking medical care, his coworkers and supervisors stepped up the harassment to the point that [Mr. Franklin] sought medical care." (ECF No. 12 ¶ 14.) Regarding Mr. Franklin's injuries on May 5[5] and 18, 2020, his "supervisors claim[ed] that [he] fabricated the injury, the medical examination, the prescriptions, and the physical therapy associated with this injury." (ECF No. 12 ¶ 19.) "The USPS accused [Mr. Franklin] of dereliction of duty and claimed that he may have been injured on the job, but the injury was far less than what the true medical diagnosis proved." (ECF No. 12 ¶ 20.) "The USPS claims that [Mr. Franklin] did not sustain injuries so severe that he required medical attention and used that as a basis to attack and isolate him from the workforce." (ECF No. 12 ¶ 28.)

"[T]he USPS failed to meet with [Mr. Franklin] in good faith, which prompted him to miss work." (ECF No. 12 ¶ 21.) Further, "[b]ecause of the injury, [Mr. Franklin] was not able to fill out absentee forms properly and submit them to his supervisors." (ECF No. 12 ¶ 21.) However, "[t]he USPS claimed that [Mr. Franklin] deliberately failed to fill out absentee forms and that the injury played no part in his failure to appear for work." (ECF No. 12 ¶ 22.)

---

[5]   The Third Amended Complaint is inconsistent with respect to the date Mr. Franklin sustained his first injury. In some paragraphs, Mr. Franklin identifies the date of injury as May 5, 2020 (ECF No. 12 ¶ 17), while in other paragraphs he identifies the date of injury as May 6, 2020 (ECF No. ¶ 18). The Court presumes this to be a scrivener's error. In any event, the date of Mr. Franklin's first injury is not material.

"USPS . . . accus[ed] [Mr. Franklin] of shirking his duties after sustaining an injury on the job." (ECF No. 12, at 5.) Additionally, Mr. Franklin's "supervisors claimed that [he] did not turn in medical records to substantiate his claim that he was injured on the job and needed assistance, and furthermore claimed that the medical doctors who provided him treatment, including Workers Compensation, were not applicable to Americans With Disability Act status." (ECF No. 12, at 5–6.) "USPS claimed that [Mr. Franklin] did not turn in documents . . . which essentially means that the USPS accused [Mr. Franklin] of fraud." (ECF No. 12, at 6.) Mr. Franklin asserts that "USPS has acted in bad faith by accusing [him] of defrauding the USPS." (ECF No. 12 ¶ 26.)

Further, "[o]n several occasions, [Mr. Franklin] was excluded from work-related and after-hours functions based on color." (ECF No. 12, at 4–5.) Mr. Franklin "endured a hostile work environment that included inappropriate, color based statements directed at him from several supervisory officials and co-workers." (ECF No. 12, at 5.) "On multiple dates [Mr. Franklin's supervisors and coworkers made inappropriate remarks regarding his color." (ECF No. 12 ¶ 12.) "Such insults included statements from coworkers and supervisory postal workers that [Mr. Franklin], because he was of a darker skin color descent, was inherently lazy and a shirker." (ECF No. 12 ¶ 13.)

### 4.    Pre-Disciplinary Interviews

"On several occasions, USPS supervisors ordered [Mr. Franklin] to be present at pre-disciplinary interviews", "punishing him for obtaining medical treatment." (ECF No. 12, at 7–8.) Mr. Franklin states that "[a]ccording to USPS regulations, [he] is entitled to have a Union representative with him or an attorney of his choice." (ECF No. 12 ¶ 29.) However, "USPS failed to inform [him] of his rights, and further accused him of deliberately refusing to meet with

the interview panel." (ECF No. 12 ¶ 30.) Mr. Franklin states that he "refus[ed] to attend the

interviews because he had no opportunity to meet with an attorney of his choice or speak to the

Union representative as counsel." (ECF No. 12 ¶ 31.) "[T]he interviews were not recorded

properly and . . . USPS acted deliberately against its own rules and regulations to dismiss [Mr.

Franklin] from serving as a postal carrier." (ECF No. 12, at 7.)

### B.    Procedural Background

On April 18, 2024, Mr. Franklin filed an application to proceed *in forma pauperis* (the

"Application"), attaching his proffered Complaint. (ECF No. 1; ECF No. 1–2.) On April 29,

2024, the Court granted the Application. (ECF No. 2, at 1.) The Court further determined that

the proffered Complaint offended Federal Rule of Civil Procedure 8, which requires a short and

plain statement of the grounds for this Court's jurisdiction and a statement of the claims showing

that the plaintiff is entitled to relief. (ECF No. 2, at 1.) The Court ordered Mr. Franklin to file an

Amended Complaint "which outlines in simple and straightforward terms why Mr. Franklin

thinks that he is entitled to relief and why the Court has jurisdiction over his case." (ECF No. 2,

at 1.) The Court ordered that the Amended Complaint comply with the following directions:

1.  At the very top of the amended pleading, Mr. Franklin must place the following
    caption in all capital letters: "AMENDED COMPLAINT FOR CIVIL ACTION
    NUMBER: 3:24cv287."

2.  The first paragraph of the particularized amended complaint must contain a list of
    defendant(s). Thereafter, in the body of the particularized amended complaint,
    Mr. Franklin must set forth legibly, in separately numbered paragraphs, a short
    statement of the facts giving rise to his claims for relief. Thereafter, in separately
    captioned sections, Mr. Franklin must clearly identify each federal or state law
    allegedly violated. Under each section, Mr. Franklin must list each defendant
    purportedly liable under that legal theory and explain why he believes each
    defendant is liable to him. Such explanation should reference the specific
    numbered factual paragraphs in the body of the particularized amended complaint
    that support that assertion.

5

3. Mr. Franklin shall also include the relief he requests - what in the law is called a "prayer for relief."

4. The particularized amended complaint must stand or fall on its own accord. Mr. Franklin may not reference statements in the prior complaint.

5. The particularized amended complaint must omit any unnecessary incorporation of factual allegations for particular claims and any claim against any defendant that is not well-grounded in the law and fact. *See Sewraz v. Guice*, No. 3:08cv35 (RLW), 2008 WL 3926443, at *2 (E.D. Va. Aug. 26, 2008).

(ECF No. 2, at 1–2.) The Court advised Mr. Franklin that "the failure to strictly comply with the Court's directives and with applicable rules will result in DISMISSAL OF THIS ACTION WITHOUT PREJUDICE[.]" (ECF No. 2, at 2 (emphasis in original).)

On May 24, 2024, Mr. Franklin filed his First Amended Complaint. (ECF No. 4.) Four days later, on May 28, 2024, without requesting the Court's leave pursuant to Federal Rule of Civil Procedure 15(a)(2),[6] Mr. Franklin filed a Second Amended Complaint. (ECF No. 5.) In the Second Amended Complaint, Mr. Franklin explained that "[t]he document filed on 05/24/2024 was a rough draft [he] printed out by mistake." (ECF No. 5, at 8.) On August 21, 2024, the Court granted Mr. Franklin leave to file *nunc pro tunc* the Second Amended Complaint, but dismissed the Second Amended Complaint for failure to "comply with the clear instructions set forth in the Court's April 29, 2024 Order." (ECF No. 6, at 2.)

_____

[6] Rule 15(a) states, in pertinent part:

(a) AMENDMENTS BEFORE TRIAL.

(1) *Amending as a Matter of Course.* A party may amend its pleading *once* as a matter of course ...[.]

(2) *Other Amendments.* In all other cases, a party may amend its pleadings only with the opposing party's written consent or the court's leave. The court should freely give leave when justice so requires.

Fed. R. Civ. P. 15(a) (emphasis added).

On September 3, 2024, Mr. Franklin filed a Motion to Amend/Correct. (ECF No. 9.) The Court construed his Motion to Amend/Correct "as a Motion to Reconsider under Federal Rule of Civil Procedure 59(e)" "[i]n deference to Mr. Franklin's *pro se* status." (ECF No. 11, at 2.) On September 6, 2024, the Court granted Mr. Franklin's Motion to Reconsider and ordered him to file "an Amended Complaint which complies with the directives [] of this Court's April 29, 2024 Order" no later than October 7, 2024. (ECF No. 11, at 2.)

On October 7, 2024, Mr. Franklin timely filed a Third Amended Complaint—the operative complaint in this case.[7] (ECF No. 12.) (ECF No. 13.) In his Third Amended Complaint, Mr. Franklin asserts three counts:

**Count I:**   Title VII Discrimination Claim Based on Color; Color Discrimination in Violation of 5 U.S.C. § 2302(b)(6) and 5 U.S.C. § 2302(b)(10)

**Count II:**   Violations of Va. Code § 51.5-41 and 65.2-308(B) and Americans with Disabilities Act

**Count III:**   Violations of Va. Code § 51.5-41 and 65.2-308(B) and Americans with Disabilities Act

(ECF No. 12, at 4–8.) On December 31, 2024, Mr. [Steiner] timely filed the instant Motion to Dismiss under Federal Rule 12(b)(1) and 12(b)(6).[8] (ECF No. 19.) On January 2, 2025, the Court issued a *Roseboro* Notice. (ECF No. 21.) The *Roseboro* Notice stated that "Plaintiff is entitled to file a response opposing the motion within twenty-one (21) days of the filing date of this Notice." (ECF No. 21, at 1 (emphasis omitted).)

---

[7] On October 9, 2024, Mr. Franklin filed a Memorandum in Support of his Third Amended Complaint and several exhibits, (ECF No. 13), which is not permitted by the Federal Rules. Therefore, the Court considers only the allegations in Mr. Franklin's Third Amended Complaint. (ECF No. 12; *see also* Note 13, *infra*.)

[8] Mr. Franklin returned to the Court an executed summons for Mr. [Steiner] on November 20, 2024. (ECF No. 18.)

On January 24, 2025—one day after the deadline in the *Roseboro* Notice—Mr. Franklin filed a response.[9]  On January 30, 2025—six days after Mr. Franklin filed his response—Defendant timely filed a reply.  (ECF No. 24.)  On February 3, 2025, Mr. Franklin filed a Motion to Strike Defendant's Memorandum Dated 30 January 2025 (the "Motion to Strike"), asserting that Mr. [Steiner's] response to his Motion to Dismiss was an improper sur-reply.[10]  (ECF No. 25, at 3.)

## II. Standard of Review

### A.    Motion to Dismiss Under Rule 12(b)(1)

Federal district courts are courts of limited subject matter jurisdiction.  *United States ex rel. Vuyyuru v. Jadhav*, 555 F.3d 337, 347 (4th Cir. 2009) (citing *Exxon Mobile Corp. v. Allapattah Servs., Inc.*, 545 U.S. 546, 552 (2005)).  Rule 12(b)(1) of the Federal Rules of Civil Procedure allows a party to move to dismiss a plaintiff's complaint for lack of subject matter jurisdiction.  Fed. R. Civ. P. 12(b)(1).  "A district court should grant a motion to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1) only if the material jurisdictional facts are not in dispute and the moving party is entitled to prevail as a matter of law."  *Upstate Forever v. Kinder Morgan Energy Partners, L.P.*, 887 F.3d 637, 645 (4th Cir. 2018).  "A court's determination of subject matter jurisdiction addresses whether the court has the authority to entertain a particular kind of case, not whether a claim for relief is viable under a particular construction of a statute."  *Id.* at 645–46.

---

[9] Mr. Franklin erroneously titled his Response as "Reply Brief to Defendant's Reply Dated 31 December 2024."  (ECF No. 22, at 1.)

[10] Because Mr. [Steiner's] January 30, 2025 Memorandum is a proper reply brief timely filed under the Federal Rules, the Court will deny Mr. Franklin's Motion to Strike.  (ECF No. 25.)

A motion to dismiss brought pursuant to Rule 12(b)(1) may challenge the existence of subject matter jurisdiction in two ways. *Kerns v. United States*, 585 F.3d 187, 192 (4th Cir. 2009). First, a Rule 12(b)(1) motion may attack the complaint on its face, asserting that the complaint fails to state a claim upon which subject matter jurisdiction can lie. *See Int'l Longshoremen's Ass'n v. Va. Intern. Terminals, Inc.*, 914 F. Supp. 1335, 1338 (E.D. Va. 1996) (citing *Adams v. Bain*, 697 F.2d 1213, 1219 (4th Cir. 1982)). "When a defendant makes a facial challenge to subject matter jurisdiction, the plaintiff, in effect, is afforded the same procedural protection as he [or she] would receive under a Rule 12(b)(6) consideration." *Kerns*, 585 F.3d at 192. In such a challenge, a court assumes the truth of the facts alleged by plaintiff. *See Int'l Longshoremen's Ass'n*, 914 F.Supp. at 1338.

Alternatively, a Rule 12(b)(1) motion may challenge the existence of subject matter jurisdiction in fact, apart from the pleadings. When a litigant raises a Rule 12(b)(1) motion to challenge "the factual basis for subject matter jurisdiction," the petitioner bears "the burden of proving subject matter jurisdiction." *Richmond, Fredericksburg & Potomac R. Co. v. United States*, 945 F.2d 765, 768 (4th Cir. 1991). In such a case, because a party challenges the court's "'very power to hear the case,'" the trial court may weigh evidence to determine the existence of jurisdiction. *Int'l Longshoremen's Ass'n*, 914 F. Supp. at 1338 (quoting *Mortensen v. First Fed. Sav. & Loan Ass'n*, 549 F.2d 884, 891 (3d Cir. 1977)). No presumptive truthfulness attaches to the plaintiff's allegations, and the existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of jurisdictional claims. *See Int'l Longshoremen's Ass'n*, 914 F. Supp. at 1338.; *see also Adams*, 697 F.2d at 1219.

In sum, when a defendant asserts that the complaint fails to allege sufficient facts to support subject matter jurisdiction, the court must apply a standard patterned on Rule 12(b)(6)

and assume the truthfulness of the facts alleged. *Kerns*, 585 F.3d at 193. On the other hand,

when the defendant challenges the veracity of the facts underpinning subject matter jurisdiction,

the trial court may go beyond the complaint, conduct evidentiary proceedings, and resolve the

disputed jurisdictional facts. *Id.* "And when the jurisdictional facts are inextricably intertwined

with those central to the merits, the court should resolve the relevant factual disputes only after

appropriate discovery, unless the jurisdictional allegations are clearly immaterial or wholly

unsubstantial and frivolous." *Kerns*, 585 F.3d at 193; *see also Navy Fed. Credit Union v. LTD*

*Fin. Servs., LP*, 368 F. Supp. 3d 889, 893 (E.D. Va. 2019) ("When such a factual challenge is

made to jurisdiction, the jurisdictional facts must be determined with the same procedural

safeguards as afforded through a motion for summary judgment").

### B.  Motion to Dismiss Under Rule 12(b)(6)

"A motion to dismiss under Rule 12(b)(6) tests the sufficiency of a complaint;

importantly, it does not resolve contests surrounding the facts, the merits of a claim, or the

applicability of defenses." *Republican Party of N.C. v. Martin*, 980 F.2d 943, 952 (4th Cir.

1992) (citing 5A Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1356

(1990)). To survive Rule 12(b)(6) scrutiny, a complaint must contain sufficient factual

information to "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*,

550 U.S. 544, 570 (2007); *see also* Fed. R. Civ. P. 8(a)(2) ("A pleading that states a claim for

relief must contain . . . a short and plain statement of the claim showing that the pleader is

entitled to relief."). Mere labels and conclusions declaring that the plaintiff is entitled to relief

are not enough. *Twombly*, 550 U.S. at 555. Thus, "naked assertions of wrongdoing necessitate

some factual enhancement within the complaint to cross the line between possibility and

10

plausibility of entitlement to relief." *Francis v. Giacomelli*, 588 F.3d 186, 193 (4th Cir. 2009) (quoting *Twombly*, 550 U.S. at 557) (internal quotation marks omitted).

A complaint achieves facial plausibility when the facts contained therein support a reasonable inference that the defendant is liable for the misconduct alleged. *Twombly*, 550 U.S. at 556; *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). This analysis is context-specific and requires "the reviewing court to draw on its judicial experience and common sense." *Giacomelli*, 588 F.3d at 193 (citation omitted). The court must assume all well-pleaded factual allegations to be true and determine whether, viewed in the light most favorable to the plaintiff, they "plausibly give rise to an entitlement to relief." *Iqbal*, 556 U.S. at 679; *see also Kensington Volunteer Fire Dep't, Inc. v. Montgomery Cnty., Md.*, 684 F.3d 462, 467 (4th Cir. 2012) (concluding that the court in deciding a Rule 12(b)(6) motion to dismiss "'must accept as true all of the factual allegations contained in the complaint' and 'draw all reasonable inferences in favor of the plaintiff'" (quoting *E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 440 (4th Cir. 2011))).

Because Mr. Franklin proceeds *pro se*, the Court liberally construes his filings. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007) ("A document filed *pro se* is to be liberally construed, and a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers.") (internal quotation marks and citations omitted). "This principle of liberal construction, however, has its limits." *Suggs v. M&T Bank*, 230 F. Supp. 3d 458, 461 (E.D. Va. 2017), *aff'd sub nom. Suggs v. M&T Bank*, 694 F. App'x. 180 (4th Cir. 2017). A *pro se* plaintiff must allege facts sufficient to state a cause of action. *Bracey v. Buchanan*, 55 F.Supp.2d 416, 421 (E.D. Va. 1999) (citation omitted). The Court cannot act as a *pro se* litigant's "advocate and develop, *sua sponte*, statutory and constitutional

11

claims that the [litigant] failed to clearly raise on the face of [the] complaint." *Newkirk v. Circuit Ct. of Hampton*, No. 3:14cv372 (HEH), 2014 WL 4072212, at *1 (E.D. Va. Aug. 14, 2014).

### III.  Analysis

### A.    Mr. Franklin Fails to State a Title VII Claim in Count I

Reading Mr. Franklin's Amended Complaint favorably, as the Court must, the Court interprets it to bring both a disparate treatment claim and a hostile work environment claim under Title VII.  For the reasons articulated below, both claims fail.

### 1.    Legal Standard:  Title VII Disparate Treatment and Hostile Work Environment Claims

Title VII makes it "an unlawful employment practice" for an employer to "discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin[.]"  42 U.S.C. § 2000e–2(a)(1).  When asserting a claim of employment discrimination under Title VII, a plaintiff may prove his or her claim through direct or circumstantial evidence.  *Desert Palace, Inc. v. Costa*, 539 U.S. 90, 99–100 (2003); *see Love-Lane v. Martin*, 355 F.3d 766, 786 (4th Cir. 2004).  When, as here, the case does not involve direct evidence of discrimination, the plaintiff must rely on the burden-shifting scheme established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).  Under the *McDonnell Douglas* framework, the plaintiff must first demonstrate a prima facie case of his or her claim.  *Id.* at 802.

To establish a prima facie case of disparate treatment, a plaintiff must show that:  (1) he or she is a member of a protected class; (2) he or she suffered from an adverse employment action; (3) at the time the employer took the adverse employment action he or she was performing at a level that met the employer's legitimate expectations; and, (4) he or she was treated differently than similarly-situated employees outside the protected class.  *Hill v.*

12

*Lockheed Martin Logistics Mgmt.*, 354 F.3d 277, 285 (4th Cir. 2004); *Brockman v. Snow*, 217 F. App'x 201, 205 (4th Cir. 2007); *Scott v. Health Net Fed. Servs., LLC*, No. 1:10cv930, 2011 WL 3489612, at *6 (E.D. Va. Aug. 9, 2011), *aff'd*, 463 F. App'x 206 (4th Cir. 2012). Although a Title VII plaintiff need not plead facts that constitute a prima facie case, *see Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 510–15 (2002), a plaintiff still bears the burden of alleging facts "sufficient to state all the elements of her claim." *Jordan v. Alt. Res. Corp.*, 458 F.3d 332, 346 (4th Cir. 2006) (internal quotation marks omitted), *overruled in non-relevant part by Boyer-Liberto v. Fontainebleau Corp.*, 786 F.3d 264 (4th Cir. 2015). Courts, nonetheless, "may look to the requirements of a prima facie case as a guide in assessing the plausibility of plaintiff's claim for relief." *Craft v. Fairfax Cnty. Gov't*, No. 1:16cv86, 2016 WL 1643433, at *4 (E.D. Va. Apr. 26, 2016) (citing 626 F.3d 187, 190 (4th Cir. 2010)); *see also McCleary-Evans v. Md. Dep't of Trans.*, 780 F.3d 582, 585 (4th Cir. 2015) (applying prima facie case as guide in motion to dismiss).

> Consequently, when a plaintiff's complaint sets forth facts in support of his [or her] claim for relief and tracks the language of the applicable cause of action, the legal conclusions "are not talismanic" because "it is the alleged facts supporting those words, construed liberally, which are the proper focus at the motion to dismiss stage."

*Jordan*, 458 F.3d at 346 (quoting *Bass v. E.I. DuPont de Nemours & Co.*, 324 F.3d 761, 765 (4th Cir. 2003)).

To bring a Title VII hostile work environment claim, Mr. Franklin must allege sufficient facts to plausibly show that the harassment he suffered was "(1) unwelcome; (2) based on [his [or her] protected characteristic, such as race, national origin, or religion]; (3) sufficiently severe or pervasive to alter the conditions of [his [or her]] employment and create an abusive atmosphere; and (4) imputable to [the defendant]." *Mustafa v. Iancu*, 313 F. Supp. 3d 684, 695

(E.D. Va. 2018) (citing *E.E.O.C. v. Cent. Wholesalers, Inc.*, 573 F.3d 167, 175 (4th Cir. 2009))

(granting motion to dismiss); *see also E.E.O.C. v. Sunbelt Rentals*, 521 F.3d 306, 313 (4th Cir.

2008) (discussing the elements of a Title VII hostile work environment claim when addressing

the district court's grant of employer's motion for summary judgment).

When considering whether a plaintiff has alleged sufficient facts to state a Title VII

hostile work environment claim, the Court will "consider 'the totality of the circumstances,

including the frequency of the discriminatory conduct; its severity; whether it is physically

threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes

with an employee's work.'" *Iancu*, 313 F. Supp. 3d at 695 (quoting *Okoli v. City of Balt.*, 648

F.3d 216, 222 (4th Cir. 2011)). The "Fourth Circuit has made clear that 'Title VII does not

create a general civility code in the workplace' and 'complaints premised on nothing more than

rude treatment by [coworkers], callous behavior by [one's] superiors, or a routine difference of

opinion and personality conflict with [one's] supervisor, are not actionable." *Id.* (internal

quotation marks, citations, and footnote omitted).

### 2.    Mr. Franklin Fails to Plausibly Allege Title VII Violations for Disparate Treatment or Hostile Work Environment

Mr. Franklin's Title VII claims in Count I fail because it is devoid of "factual

enhancement within the complaint to cross the line between possibility and plausibly of

entitlement to relief." *Giacomelli*, 588 F.3d at 193. To survive a motion to dismiss for failure to

state a claim, the plaintiff must "allege facts sufficient to state all the elements of [his or] her

claim." *Bass*, 324 F.3d at 765 (citing *Dickson v. Microsoft Corp.*, 309 F.3d 193, 213 (4th Cir.

2002)); *Fluor Enters., Inc. v. Mitsubishi Hitachi Power Sys. Americas, Inc.*, No. 3:17cv622

(MHL), 2018 WL 3016286, at *3 (E.D. Va. June 15, 2018). Viewing Mr. Franklin's allegations

favorably, as it must at this stage, the Court reads the Third Amended Complaint as asserting two

14

Title VII claims in Count I: a disparate treatment claim and a hostile work environment claim. Mr. Franklin does not allege sufficient facts to demonstrate the elements of either claim under Title VII.

Respecting what the Court construes to be his disparate treatment claim, Mr. Franklin alleges that "[o]n several occasions, [he] was excluded from work-related and after-hours functions based on color." (ECF No. 12, at 4–5.) However, he fails to include any factual allegations regarding the nature of the work-related and after-hours functions, when the alleged exclusions occurred, or facts suggesting any such exclusion was "based on color." Mr. Franklin further alleges that he "endured color discrimination at the workplace" and that "[t]he workplace routinely ignored Title VII requirements[.]" (ECF No. 12 ¶¶ 13, 15.) These "labels and conclusions" are also insufficient to plausibly state a Title VII claim above a speculative level. *Twombly*, 550 U.S. at 555. Thus, Mr. Franklin fails to allege facts to establish a disparate treatment claim under Title VII.

Respecting what the Court construes to be his hostile work environment claim, Mr. Franklin alleges that "he endured a hostile work environment that included inappropriate, color based statements directed at him from several supervisory officials and co-workers." (ECF No. 12, at 5.) Mr. Franklin further alleges that "[a]fter being injured on the job and seeking medical care, his coworkers and supervisors stepped up the harassment to the point that [Mr. Franklin] sought medical care." (ECF No. 12 ¶ 14.) However, Mr. Franklin submits a Third Amended Complaint entirely bereft of any allegations regarding the harassment he alleges he experienced or the medical care he alleges he sought in response. Thus, these allegations constitute "naked assertions of wrongdoing" that do not demonstrate the plausibility of his entitlement to relief. *Francis*, 588 F.3d at 193.

15

Mr. Franklin further offers that "on multiple dates his supervisors and coworkers made inappropriate remarks regarding his color" and that "[s]uch insults included statements from coworkers and supervisory postal workers that [Mr. Franklin], because he was of a darker skin color descent, was inherently lazy and a shirker." (ECF No. 12 ¶¶ 12–13.)  Notably, the Third Amended Complaint is devoid of allegations regarding who made these statements or when they were made.  More importantly, however, these facts insufficiently demonstrate the third element of a hostile work environment claim—that the discrimination was "sufficiently severe or pervasive to alter the conditions of [the plaintiff's] employment and creative an abusive atmosphere." *See Mustafa*, 313 F. Supp. 3d at 695.

To show that Defendant's discriminatory behavior was objectively severe and pervasive at the motion to dismiss stage, Mr. Franklin must allege sufficient facts plausibly demonstrating that the workplace was "'permeated with discriminatory intimidation, ridicule and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment.'" *Mustafa*, 313 F. Supp. 3d at 695 (quoting *Harris v. Forklift Sys. Inc.*, 510 U.S. 17, 21 (1993)).  Mr. Franklin does not allege the frequency with which "inappropriate remarks" or "insults" were made, (ECF No. 12 ¶¶ 12–13), or whether or how any such comments unreasonably interfered with Mr. Franklin's work.  To the contrary, his Amended Complaint provides only one example of repeated "inappropriate remark[s]" expressing that he was "inherently lazy and a shirker" because of his race, but he does so by vaguely identifying that they were said by unidentified parties on "multiple dates."  (ECF No. 12 ¶¶ 12–13.)  *Compare Rose v. DeJoy*, No. 3:23cv405 (HEH), 2024 WL 3850809, at *4 (E.D. Va. Aug. 16, 2024) (stating that even though the dates of the two offensive remarks were identified, "[t]here is simply not enough alleged in the Second Amended Complaint to show that these two

16

(2) incidents involving offensive comments are sufficient to constitute a hostile work environment"). Because Mr. Franklin "fails to provide specific details about [these comments]" with any specificity, the Court "is unable to evaluate their severity." *Rose*, 2024 WL 3850809, at *4.

Therefore, Mr. Franklin fails to plead sufficient facts to plausibly establish the required third element of a Title VII hostile work environment claim.

In sum, even assuming the truth of the factual allegations in Mr. Franklin's Amended Complaint and making all reasonable inferences in his favor, the Court concludes that Mr. Franklin fails to allege sufficient facts to establish a disparate treatment claim or a hostile work environment claim under Title VII. The Court will dismiss Mr. Franklin's Title VII claim in Count I.

**B.    The Court Lacks Subject Matter Jurisdiction Over Mr. Franklin's Claims Under 5 U.S.C. § 2302(b) in Count I**

In Count I, Mr. Franklin also alleges color discrimination in violation 5 U.S.C. § 2302(b)(6) and (10).[11] Section 2302 defines "prohibited personnel practice" under the Civil

---

[11] This statute provides, in pertinent part:

(b) Any employee who has authority to take, direct others to take, recommend, or approve any personnel action, shall not, with respect to such authority—

\*        \*        \*

(6) grant any preference or advantage not authorized by law, rule, or regulation to any employee or applicant for employment (including defining the scope or

Service Reform Act ("CSRA"), which is an "'integrated scheme of administrative and judicial review' established by Congress . . . for claims arising out of federal employment." 5 U.S.C. § 2302; *Fleming v. Spencer*, 718 F. App'x 185, 186 (4th Cir. 2018) (quoting *United States v. Fausto*, 484 U.S. 439, 448 (1988)).

"Pursuant to the CSRA, an employee may appeal a 'major personnel action[ ], such as termination,' directly to the [Merit Systems Protection Board ("MPSB")], and if he "does not prevail before the MSPB, [he] may seek judicial review in the Federal Circuit.'" *Zachariasiewicz v. U.S. Dep't of Justice*, 48 F.4th 237, 242–43 (4th Cir. 2022) (quoting *Fleming*, 718 F. App'x at 186); *see* 5 U.S.C. § 7513(d).  To challenge other, '[l]ess serious' personnel actions that violate certain 'prohibited personnel practices,' the employee must first file a complaint in the [Office of Special Counsel ("OSC")] before proceeding to the MSPB." *Zachariasiewicz*, 48 F.4th at 242–43 (citing *Fleming*, 718 F. App'x at 186; 5 U.S.C. § 1214(a)(3).  If the OSC concludes that reasonable grounds exist to believe that a constitutional violation has occurred, "the OSC may petition the MSPB for an order directing the agency to take correction action." *Fleming*, 718 F. App'x at 186 (citing 5 U.S.C. § 1214(b)(2)(C)).  "An employee adversely affected by the MSPB's final decision may obtain judicial review in the Federal Circuit." *Fleming*, 718 F. App'x at 186–87 (citing 5 U.S.C. § 1214(c), § 7703(b)).

---

> manner of competition or the requirements for any position) for the purpose of improving or injuring the prospects of any particular person for employment;
>
> \*       \*       \*
>
> (10) discriminate for or against any employee or applicant for employment on the basis of conduct which does not adversely affect the performance of the employee or applicant or the performance of others[.]

5 U.S.C. § 2302(b)(6).

Mr. Franklin has failed to allege he engaged in any administrative remedies, much less that he exhausted those remedies in the manner proscribed by the CSRA.[12] Further, "[e]ven if he had filed such a complaint[,] judicial review would not be available in this Court." *Miller v. McWilliams*, No. 1:20cv671, 2021 WL 3192164, at *9 (E.D. Va. July 28, 2021). Thus, Mr. Franklin "has no private cause of action under these statutory provisions in the Eastern District of Virginia." *Id.* at *8. Thus, the Court will dismiss Mr. Franklin's color discrimination claims under 5 U.S.C. § 2302(b) for lack of subject matter jurisdiction.

## C.   **Mr. Franklin Fails to State ADA Claims in Counts II and III**

In Counts II and III of the Amended Complaint, Mr. Franklin asserts claims against Mr. [Steiner]—a federal employee—pursuant to the Americans with Disabilities Act ("ADA"). (ECF No. 12, at 3, 5–8.) "However, the ADA does not apply to federal employees." *Morton v. Dejoy*, No. 3:23cv618 (RCY), 2024 WL 4045451, at *13 (E.D. Va. Sept. 4, 2024); 42 U.S.C. § 12111(5)(B) (excluding the United States from the definition of "employer" under the ADA). Rather, "the Rehabilitation Act is a federal employee's exclusive remedy for disability-related employment discrimination." *McNair v. Spencer*, No. 4:17cv38 (MSD), 2018 WL 2147515, at *6 n.6 (E.D. Va. May 3, 2018); *Griffin v. Holder*, 972 F. Supp. 2d 827, 831 n.1 (D.S.C. 2013) ("Although Plaintiff alleged violations of the ADA, the United States is specifically excluded from the ADA's definition of employer and, thus, a claim will not stand against the United

---

[12] Indeed, to the extent Mr. Franklin alleges that he was unable to initiate or exhaust his administrative remedies because "USPS failed to meet with [him] in good faith" and he was "not able to fill out absentee forms properly and submit them to his supervisors" due to his injuries, (ECF No. 12 ¶ 21), he acknowledges that he did not properly exhaust his administrative remedies.

States. Rather, the Rehabilitation Act provides the exclusive judicial remedy for claims based upon a federal employee's disability.").[13]

Thus, the Court will dismiss Mr. Franklin's ADA claims in Counts II and III for failure to state a claim.

### D.    The Court Lacks Subject Matter Jurisdiction Over Mr. Franklin's Claims Under Virginia Code §§ 51.5-41 and 65.2-308(B) in Counts II and III

In Counts II and III of his Amended Complaint, Mr. Franklin asserts violations of Va. Code §§ 51.5-41 and 65.2-308(B) against Mr. [Steiner]. (ECF No. 12, at 5–8.) However, Mr. Franklin's Virginia law claims fail for several reasons. First, "[a]bsent a waiver, sovereign immunity shields the Federal Government and its agencies from suit." *FDIC v. Meyer*, 510 U.S. 471, 475 (1994). Mr. Franklin has failed to identify any waiver of sovereign immunity by the federal government to any claims under these state statutes.

Second, Virginia Code § 51.5-41 explicitly states that it "shall not apply to employers covered by the federal Rehabilitation Act of 1973." Va. Code § 51.5-41(F). As a federal employer, Mr. [Steiner] is covered by the Rehabilitation Act. *See McNair*, 2018 WL 2147515, at *6 n.6 ("[T]he Rehabilitation Act is a federal employee's exclusive remedy for disability-related

---

[13] In the Motion to Dismiss, Mr. [Steiner] argues that even if the Court were to construe Mr. Franklin's ADA claims as Rehabilitation Act claims, the Court should dismiss for failure to state a claim. (ECF No. 20, at 15.) However, in response, Mr. Franklin states that he "disagrees" with Defendant's contention that he "erred by filing an ADA claim versus a claim under the Rehabilitation Act." (ECF No. 22, at 21.) Because Mr. Franklin disclaims any intention to file a Rehabilitation Act count, the Court cannot construe them as such on the record before it.

Mr. Franklin appears to have tried to file an additional amended complaint as part of his Memorandum in Support of his Third Amended Complaint. (ECF No. 13-5.) As explained above, the Federal Rules do not permit Mr. Franklin to file this Memorandum. To the extent Mr. Franklin intended for the additional complaint (ECF No. 13-5) to function as his operative complaint, it is procedurally improper and need not be considered by the Court. *See* Fed. R. Civ. P. 15(a)(2).

employment discrimination."). Similarly, Virginia Code 65.2-308 is part of the Virginia Workers Compensation Act. "Virginia law 'cannot subject [a federal entity] to the requirements of the [Virginia Workers Compensation Act].'" *Landon v. United States*, No. 3:19cv359 (DJN), 2019 WL 5197550, at \*4 (E.D. Va. Oct. 15, 2019) (quoting *Gibbs v. Newport News Shipbuilding & Drydock Co.*, 733 S.E.2d 648, 651 (Va. 2012)), *aff'd as modified*, 816 F. App'x 853 (Mem.) (4th Cir. 2020).

Third, Mr. Franklin appears to have withdrawn his Virginia law claims in Counts II and III. Under the heading "Claims made under Virginia State Laws" in his response brief, Mr. Franklin "admits to invoking State law incorrectly in writing this Federal suit." (ECF No. 22, at 22.)

Thus, the Court will dismiss Mr. Franklin's Virginia law claims in Counts II and III.

## IV. Conclusion

For the foregoing reasons, the Court will grant Defendant's Motion to Dismiss, (ECF No. 19), and deny Mr. Franklin's Motion to Strike, (ECF No. 25). The Court will dismiss without prejudice Franklin's Third Amended Complaint. (ECF No. 12.)

An appropriate Order shall issue.

Date: 09 | 15 | 2025
Richmond, Virginia

/s/
M. Hannah Lauck
United States District Judge